148 N.J. Super. 558 (1977)
372 A.2d 1323
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOHN PATRICK TULLY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 1, 1977.
Decided March 18, 1977.
*560 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. William F. Hyland, Attorney General, attorney for appellant (Mr. Alfred J. Luciani, Deputy Attorney General, of counsel and on the brief).
Mr. Donald I. Bryan, Jr., attorney for respondent.
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
The State appeals from an order denying its motion to dismiss defendant's application for reduction of his sentence under R. 3:21-10(a).
On January 7, 1975 defendant entered retraxit pleas of guilty to various criminal charges as part of a plea agreement with State authorities under which he was to become a State's witness in the prosecution of the "Campisi" indictment (a series of prosecutions involving nine *561 defendants charged with murder, conspiracy to commit a series of armed robberies and to engage in gambling and drug activity). On July 30, 1975 defendant was sentenced to an aggregate term of 12 to 15 years imprisonment, to run concurrently with a sentence of 12 years imposed on the previous day by the United States District Court on unrelated charges. The sentence by the State court was to be effective as of August 28, 1975, the date that defendant was to be surrendered to federal authorities.
On August 8, 1975 defendant filed a motion for reduction of sentence, R. 3:21-10(a), claiming that the sentence imposed was not in accordance with the "plea bargain" agreement. Affidavits in support of the motion were submitted on the hearing date, October 9, 1975, before the sentencing judge. On that date defendant dismissed his attorney and moved for assigned counsel. The trial judge adjourned the proceedings without date, partly because new counsel had to be appointed and also because of the special circumstances of defendant's confinement in federal prison. Apparently, these special circumstances included the fact that defendant was under special protection.
On April 29, 1976  198 days beyond the 75-day limitation period of R. 3:21-10(a)  the hearing on defendant's motion reconvened and was continued until May 24, 1976. The State then moved that defendant's motion be dismissed as being out of time.
On July 2, 1976 the trial judge, in a written opinion, denied the State's motion to dismiss, finding that (1) the State was estopped from claiming the time limitations of R. 3:21-10(a) and (2) the informal agreement of April 29, 1976, between the State and defendant to consider a reduction of sentence to comport with the maximum federal sentence "constituted a de facto consent and was a proffer of a joint application" within the meaning of R. 3:21-10(b)(3). The trial judge implied that the time restrictions of R. 3:21-10(a) are directory in nature and should not be an absolute bar where, as here, "defendant and his *562 counsel were lulled into a feeling that this restriction in the rule would be waived because of the special circumstances of Tully's situation." Apparently, these special circumstances included the fact that (a) defendant's confinement in a federal prison under special protection was, in part, a cause for the delay, and (b) "without fault on his part," defendant would "be deprived of an opportunity to advocate and advance `the equities' of his case."
R. 3:21-10(a) contains a 60-day time limitation for filing and a 75-day requirement for disposition of applications to reduce or change a sentence:
Except as provided in paragraph (b) hereof, a motion to reduce or change a sentence shall be filed not later than 60 days after the date of the judgment of conviction, or, if a direct appeal is taken, not later than 20 days after the date of the judgment of the appellate court. The court may reduce or change a sentence, either on motion or on its own initiative, by order entered within 75 days from the date of the judgment of conviction or, if a direct appeal was taken, within 35 days of issuance of the judgment of the appellate court, and not thereafter. [Emphasis supplied]
The only exceptions to the above rule are those enumerated in subsection (b):
A motion may be filed and an order may be entered at any time (1) changing a custodial sentence to permit entry of the defendant into a custodial or non-custodial treatment or rehabilitation program for drug or alcohol abuse, or (2) amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant or (3) changing a sentence for good cause shown upon the joint application of the defendant and prosecuting attorney.
The time limitation periods set forth in paragraph (a) of the rule are to be strictly construed, and cannot be relaxed in the discretion of a trial judge. See Pressler, Current N.J. Court Rules, Comment to R. 3:21-10 at 420. In State v. Tumminello, 70 N.J. 187 (1976), defendant moved for reduction of sentence on the grounds that, since his sentencing, there has been a rapid deterioration of his health due to a worsening diabetes condition. Although it *563 was found that the circumstances before the court presented "precisely the kind of case contemplated by paragraph (b) of R. 3:21-10," the court pointed out (at 193) that the provisions of paragraph (a) would have precluded consideration of the defendant's claim if paragraph (b) had not been amended to permit modification of a custodial sentence when illness is the ground for the motion. In this regard, it was emphasized:
* * * had this application for a change in sentence been one not covered by one of the exceptions in paragraph (b), then the time limitations of paragraph (a) (which cannot be enlarged, see R. 1:3-4 (c)) would apply and the motion judge would have had no authority under the rule to enter an order reducing or changing the sentence. [at 192 n. 1, emphasis supplied]
The trial judge here relied, in part, upon the reasoning in State v. Alvarado, 95 N.J. Super. 595, 597 (App. Div. 1967), aff'd per curiam 51 N.J. 375 (1968). However, we find that case to be distinguishable. There defendant had timely filed a motion for reduction of sentence pursuant to the predecessor rule 3:7-13, (which provided for a 60-day limitation period for filing the motion and its disposition); due to the fact that the trial judge scheduled to hear the motion was unavailable, it was not heard until approximately 20 days after the 60-day period had expired. 95 N.J. Super. at 596. In concluding that defendant's motion should not be barred as being untimely, the court indicated (at 597) that the rule, strictly construed, presented somewhat of an anomaly in that although defendant had 60 days in which to make the motion, if it was made on the sixtieth day, and not then disposed of, the court would be unable to act thereon. Pressler, op. cit., Comment to R. 3:21-10 at 420. Accordingly, it was found:
* * * It is not reasonable to impute to the rule an intent to proffer to a defendant a means for obtaining sentencing relief with one hand and to deprive him of its benefit with the other on the unjust basis of another's failure to comply with a time directive. * * * [at 597]
*564 R.R. 3:7-13(a) was later amended. Its successor, R. 3:21-10(a) presently makes it clear that the motion must be made within the 60-day period, and decided within 75 days from the date of the judgment of conviction. Thus, it appears as if a specific time limitation was provided for in order "to insure prompt disposition by the sentencing judge." Pressler, op. cit., Comment to R. 3:21-10(a) at 420.
Here the hearing was held 198 days beyond the 75-day limitation period. We find that lapse to be contrary to the clear intent underlying the present rule. Moreover, had the hearing progressed as originally scheduled (defendant's motion to be assigned new counsel being a substantial cause for the delay), the trial judge could have decided the matter well within the time requirements set forth in the rule.
The trial judge's reliance upon Anske v. Palisades Park, 139 N.J. Super. 342 (App. Div. 1976), in support of the invoked estoppel, is misplaced. Plaintiff in Anske had failed to give notice of claim within the time limitations prescribed in N.J.S.A. 59:8-8 and N.J.S.A. 59:8-9. However, since the borough had not raised the point until over a year and one month after the accident, it was estopped from asserting the defense of failure to comply with the notice provisions of the Tort Claims Act. Id. at 350-351.
The situation in this case is distinguishable since it has been recognized that "the application of estoppel against the State is particularly inappropriate in areas such as criminal prosecution, where the welfare and safety of the community are the paramount considerations." State v. Abbott, 64 N.J. Super. 191, 203 (App. Div. 1960), rev'd on other grounds, 36 N.J. 63 (1961).
We find the trial judge also to have been in error when he indicated that the exception contained in R. 3: 21-10(b) (3) "may very well be applicable." Subsection 10(b) (3) provides, in pertinent part:
*565 A motion may be filed and an order may be entered at any time * * * (3) changing a sentence for good cause shown upon the joint application of the defendant and prosecuting attorney.
It is clear that this particular exception contemplates an actual and intentional "joint application" in which the prosecutor joins with defendant in requesting such relief. As pointed out in the Report of the New Jersey Supreme Court's Committee on Criminal Practice, 98 N.J.L.J. 321, 344 (1975):
* * * In effect, this provision will make it possible for any defendant to obtain a reduction of his sentence provided he can convince both the prosecutor and the judge of the merit of his cause. One possible use of the section will enable the prosecutor to recommend a sentence reduction for an inmate who decides to cooperate with the prosecution after the present time limits for change or modification of sentence have expired. This provision will also require active participation by the prosecution in a sentence reduction application and thereby serve to substantially limit the number of such motions the trial judge will have to consider. [Emphasis supplied]
Here, defendant's application was clearly his alone. Although the State at the October 9 hearing "was prepared to accede to an affirmative request of the federal government" (federal officials requested reduction of defendant's maximum under the state sentence to 12 years because maximum security complicated their protective custody assignment), no "joint application" was ever filed or contemplated by the State within the meaning of the rule.
Reversed.